Caldwell, J.
The plaintiff in error, William 0. Moore, was in- *437 dieted for the murder of Sarah Jane Stewart, and found guilty of murder in the second degree. On the trial, the following bill of exceptions was taken, and made a part of the record:
The prosecuting attorney having given evidence to prove that ■said. Sarah Jane Stewart was missing on the evening of the 17th -day of September last, and her body found in the Mahoning river ■on the afternoon of the 25th day of September aforesaid; and having given evidence tending to show that the said Sarah Jane Stewart come to her death in the manner described in the first and third -counts of the indictment, called William Huff as a witness, and offered to prove by him, that on the 22d or 23d day of September last, and during the September term, 1852, of this court, the witness, the defendant, and other persons were in a grocery in the town of ■Canfield, in said county; that during the time they were in said .grocery, a row occurred between other parties; that shortly there.after, on the same day, the said defendant, in the presence of witness, remarked that he could have rid the grocery very easily; that he could kill a man by throwing him on the ground, jamming his knees into him, and knocking the breath out of him, then grasping him by the throat, and his breath would never return. To the introduction of which evidence, counsel for the defendant objected; 'but the court overruled the objection, and admitted the testimony to go to the jury.
During the further trial of the cause, the prosecution having given evidence tending to show that the body of the deceased, after her disappearance, had been concealed until the night of the 18th of September, and then put into the river, after the prosecuting attorney had rested on behalf of the state, the defendant called William Meeker, who was then sheriff of the county, to prove that he was at the house *of the defendant on the said 17th of September, to serve a subpena in chancery on said defendant, at a particular hour on that day; and having examined said Meeker concerning matters alleged in defense, the prosecuting attorney, in the cross-examination of said witness, inquired of him concerning a ■conversation between the witness and the defendant, on the 18th day ■of September aforesaid, the day subsequent to that on which the facts called out by the defense occurred; and offered to prove by the <said Meeker, that he had mot the defendant on the morning of the 18th day of September aforesaid, at the Mansion House in Youngstown, when the defendant said to the witness: “You were at my house *438 yesterday—I was not at home.” To which the witness replied: “No, but I found the woman.” That on the witness making this remark, Moore’s countenance changed, that he appeared embarrassed, and asked: “What did you say?” and blushed. To the introduction of which testimony the counsel for the defendant objected, but the court overruled the objection, and admitted said testimony to go to the jury.
To which decisions, rulings, and admissions of testimony, the defendant, by his counsel, excepts, etc.
Several errors have been assigned on the record; but those principally relied on are taken to the rulings of the court in the admission of the evidence as presented in the bill of exceptions. It is said that those two items of evidence have no relevancy to the point in issue, and were therefore improperly admitted as evidence. Now, where a crime has been committed, and has been-concealed, as is alleged in the present instance, so that none but the perpetrator knows who committed it, the discovery of who did the deed is generally ascertained by the conduct, and acts, and sayings of the perpetrator himself. Prom our knowledge of the human mind and its workings, we expect, with almost positive certainty, that when it is the sole repository of so dreadful'a secret, it will affect the conduct and sayings of the person; hence the mind naturally looks to these with the most anxious scrutiny, and would require for its satisfaction, if such a thing were *possible, a complete transcript of the person’s conduct and sayings. Nor is-there any rule by which the mind of the person containing the secret can be presumed to influence his conduct-and sayings. The conduct, under the circumstances, is generally unnatural; which is commonly what leads to detection; and this, generally, by the observation of small and, taken by themselves, unimportant acts.
Sometimes a person is detected as the author of crime by showing an unusual anxiety to discover the perpetrator; at other times-tire discovery is led to by the person showing too much indifference. In some instances, the observation that the person appears-to know too much about the transaction, leads to the discovery; at other times, the inquiry is started by his appearing to know too-little. Those are generally acts that, in themselves, show no disposition to do mischief; but it- is because they are unnatural, because they tend to the conclusion that they are produced by a mind conscious of its guilt, that they are provable against the ac *439 cused. They are in themselves nothing, except as showing the state of mind of the party.
As we have before intimated, in eases of circumstantial evidence, the circumstances proved, taken abstractly, frequently in themselves are no evidence of the commission of crime. Take the very familiar instance of a few drops of blood being found on the person. Almost every person, some time in his life, has, by accident, got blood on his apparel when he was in the commission of no offense; and a. hundred innocent persons have thus had their garments stained where one murderer has. Just so with a tear of the clothing of the accused, where a scuffle appears to have ensued between the assailant and assailed: if appearing about the time of the transaction, it is always pei’mitted to be proved, although all persons are subject to such accidents. So of a person’s locality who is accused; you are permitted to prove his whereabouts, although, taken abstractly, there is nothing suspicious about it: it may be where he was frequently required to go; where he had been many times before when lawfully employed. In these, and innumerable other instances *that might be put, the evidence is permitted; not because the facts, taken by themselves, tend to prove guilt: for, from the fact that they more frequently happen to innocent persons than to guilty ones, the presumption, abstractly taken, is against their being proof of crime: they are admitted, however, on the ground that they are a part of the conduct, a part of the history, of the party accused, that may connect itself with the transaction and cast light upon it—may become important in connection with other facts and circumstances. If the rule were adopted that nothing could be proved in a case of this kind but what tended in itself to prove crime, in few cases depending on circumstances could any evidence whatever be given. By giving the history of the conduct and sayings of the party accused at a time when they may have been influenced by the transaction, you have opened up to the jury the source from which they are to derive their information respecting the guilt or innocence of the accused. Where the circumstances are so remote, or where it is apparent they can cast no light on the subject, although the evidence be that of the conduct of the party himself, the court would be bound to reject it.
As to the first item of evidence objected to, it could not be received as a confession or admission, for it admits nothing connected *440 with the homicide; nor could it be admitted on the ground that the party was disposed, by his own admission, to strangle persons, and therefore form the predicate of an inference that he had committed the strangling with which he was charged. We think, however, that it was admissible as a part of his conduct, from which an inference as to the workings of his mind might be drawn. And if direct relevancy to the point in issue should ho considered necessary, we here have it. He was charged with strangling the deceased; the homicide had been committed but' a few days ; the body had not been discovered; the evidence went to show that the mind of the accused was at that time running on the subject of producing death by strangling, which would certainly be the case if he were the person that committed *the deed. It has frequently been remarked that a person who is the depository of a fatal secret which he is anxious to conceal, is likely to be giving out dark insinuations touching, in some way, on the subject of the secret, as if the mind were anxious to disburden itself by giving out its workings as far as it could with safety.
This statement of the party may have been caused by something of this kind, or it may have been a mere casual remark, without being in any way connected with a contemplation of the homicide. This was a matter for the jury to determine; that it might be produced by a contemplation of the homicide, was sufficient to admit it as evidence. On the same principle, we think, the other item of evidence was admissible. When the sheriff told him that he found the woman, his peculiar conduct might have been occasioned by the apprehension that the dead body was found and a consciousness of his guilt, or it might not; it was not the province of the court, but of the jury, to determine that fact. But, although wo believe that the evidence in both instances was admissible, we would remark that it is one of the difficulties necessarily attending the investigation of a case where the proof is not positive, but has to be drawn from a chain of circumstances, that too much stress is frequently laid on trivial circumstances, when suspicion has once been aroused, and harsh and erroneous conclusions frequently drawn against the accused. And a careful judge will always instruct the jury, that, where the circumstances are reconcilable upon the theory of the accused’s innocence, they are bound so to treat them. It is only when the facts and circumstances are irreconcilable with his innocence that he can be convicted.
*441 We have examined the other errors assigned, and do not find that :any error has been committed. The indictment, in our opinion, is sufficient; the record, as we think, shows the impaneling of a competent grand jury. So far as the court are alleged to have erred by not granting a new trial, we have only to say that the whole evidence in the case is not given in the record, and it is impossible for us to determine *the importance of the evidence which it is alleged would have" been given by persons not present on the trial; standing by itself, we can not say whether this evidence was important or not. We have been able to discover no error in the record.
The judgment of the common pleas will therefore be affirmed.
Ranney, L, dissented.